## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**VOOGT REHABILITATION CENTER, LLC**
**D/B/A NEUROLOGICAL REHABILITATION**
**LIVING CENTER**                                                                          **PLAINTIFF**

**vs.**                                         **NO. 4:13cv353  JM**

**CODY RYAN METHENY; KENNY METHENY AND**
**PAMELA METHENY, AS CONSERVATORS OF THE**
**ESTATE OF CODY RYAN METHENY; ARGENT TRUST**
**COMPANY, AS TRUSTEE OF THE CODY R. METHENY**
**SPECIAL NEEDS TRUST**                                                    **DEFENDANTS**

### ORDER

This is a collection action filed by Voogt Rehabilitation Center, LLC, d/b/a Neurological

Rehabilitation Living Center ("Voogt") to recover $1,156,860 for neurological rehabilitation

services it provided to Cody Ryan Metheny as well as for finance charges.  Pending before the

Court are the following motions:  Voogt's motion for summary judgment or, alternatively, for

default judgment against the Metheny defendants (Docket No. 24); Argent's motion to stay

proceeding (Docket No. 34); the conservator's motion to set aside default and to dismiss (Docket

No. 36); Voogt's motion for protective order (Docket No. 37); Cody Metheny's motion for

partial summary judgment (Docket No. 59); and Voogt's motion to strike the answer and motion

for summary judgment filed by Cody Metheny (Docket No. 62).  A hearing was held on October

21, 2014, after which the parties agreed to attempt to negotiate a settlement prior to the Court

ruling on the pending motions. The parties have notified the Court that a settlement was not

reached.  After consideration of the motions, any responses, the replies, and the arguments of

counsel at the hearing, the Court finds that default judgment is appropriate in favor of Voogt, and

the remaining motions are denied or are moot as discussed below.

The following facts are taken from the complaint.  Cody Ryan Metheny ("Cody") was fifteen years old when he suffered medical injury as the result of surgery conducted on the wrong side of his brain on August 2, 2004.  As a result of the surgery, Cody's capacity to execute business contracts, make financial expenditures, and otherwise conduct business was impaired.  His mother and step-father, Pamela and Kenny Metheny ("the Methenys"), were appointed by the probate court to be co-guardians of his estate on July 11, 2005.  On July 1, 2005, the Metheny's as guardians filed suit against the surgeon who performed the surgery.  Cody moved to the Neurological Rehabilitation Living Center operated by Voogt in February of 2008 and began receiving rehabilitation services.  Upon Cody's Admission, Pamela Metheny as Cody's guardian signed a Fee and Lien Agreement with Voogt.  The agreement, attached as Exhibit 2 to the complaint, provided that the cost of the services to Cody would be $950 per day, with a "monthly service charge of 1.5% compounded" to be incurred "per month (18% a year) on the outstanding balance until payment has been received."   The agreement anticipated that payment would not be required immediately but would be held in abeyance pending litigation.  Specifically the agreement provided:

> [T]his document will constitute a Lien Agreement.  This means that Dr. Voogt and NRLC will obtain a legal lien on the proceeds of the recovery in court, if any.  Full payment for treatment performed under this Lien Agreement, along with interest as stated above, is due immediately upon your receipt of funds from any source in connection with the court case referenced above.
>
> You agree to keep Dr. Voogt and NLRC advised of the progress regarding the case.
>
> You agree to disperse collected funds in accordance with this Lien Agreement directly to NRLC and that such distribution to NRLC will receive a first priority position in the disbursement of the case net proceeds (i.e., NRLC will be first in line to be paid), except for attorney fees, costs, and expenses which will be deducted first from any gross recovery before any other disbursement.

The agreement was signed by Pamela Metheny as Cody's guardian.

Once Cody turned twenty-one, the probate court appointed the Methenys as co-conservators of his estate.  In May of 2008, the Methenys as conservators established a special needs trust for Cody's benefit through the probate court.  Defendant Argent Trust Company ("Argent") is the successor trustee of that trust.  That same month, the suit against the surgeon was settled for policy a limit of $1,000,000 and the net proceeds were deposited into the special needs trust.  The Methenys did not notify Voogt that the case had settled and did not pay them any portion of the settlement proceeds.

The Methenys next filed a medical malpractice suit for the improper surgery against the insurer for Arkansas Children's Hospital (ACH) on January 6, 2009.  This action ultimately resulted in a judgment of $11,000,000 against ACH's carrier.  On January 10, 2013, the net proceeds of the judgment were wired directly from the Methenys' attorney's IOLTA account into the trust, again without any notice or payment to Voogt.

Voogt filed the complaint in the instant action on June 11, 2013, alleging breach of contract, fraudulent conveyance, breach of verbal agreement or, alternatively, promissory estoppel, and unjust enrichment against Cody and his parents in their capacity as his conservators.  The complaint also sought the imposition of a constructive trust on the proceeds from the settlements held by Argent sufficient to satisfy the debt owed to it for services rendered in the amount of $1,156,860 and the agreed finance charges in the amount of $590,105.62 as of February 13, 2013.[1]

Kenny Metheny and Pamela Metheny were each served with a summons and a copy of the complaint on June 27, 2013, Pamela by personal service and Kenny by substitute service on

---

[1] The complaint also sought $17,504.97 for depositions and trial testimony provided by Voogt in the action against the ACH insurer; that claim has since been paid and is no longer at issue.

Pamela. Cody Metheny was likewise served with a summons and a copy of the complaint on

June 27, 2013, by substitute service on Pamela.  Pursuant to Rule 12 of the Federal Rules of

Civil Procedure, the deadline for all three Metheny defendants to answer or otherwise respond to

the complaint was July 18, 2013.

Rather than file an answer or a motion to dismiss, Kenny and Pamela Metheny filed for

Chapter 7 bankruptcy on the day their answer was due.  On November 6, 2013, the bankruptcy

court entered an order, without objection, granting Voogt's motion for relief from stay to proceed

with this action, noting that this lawsuit against the Methenys as conservators of Cody's estate

did not affect the administration of the Methenys' bankruptcy estate. Still none of the Methenys

made an appearance in this action.  On July 3, 2014, a clerk's entry of default was entered

against each of the three Methenys. On July 9, 2014, an amended clerk's entry of default was

entered against Pamela and Kenny to reflect that the default was against them in their capacity as

conservators as they were listed in the style of the case. On July 3, 2014, Voogt moved for

summary judgment or, alternatively, for default judgment.  Neither the Methenys as conservators

or Cody entered any appearance in this action until July 17, 2014, almost a year to the day after

their responses were due under Rule 12, when the Kenny and Pamela Metheny filed a motion to

set aside default and to dismiss the case.  Cody Metheny subsequently filed an answer on

September 9, 2014 and, on the same day, filed a motion for partial summary judgment.  Neither

of the three Methenys responded to Voogt's motion for summary judgment or, alternatively, for

default judgment, but a response was filed by Argent.

<u>Kenny and Pamela Metheny</u>

In their motion to set aside the default judgments entered against them, the Metheny's

argue that the summonses issued in this was case were directed to them personally and not as

conservators, making the attempt to serve them as conservators defective under Rule 4.  They also claim that the complaint is ambiguous as to whether the claims are against them personally or in their capacity as conservators of Cody's estate.  The style of the case on the summonses was "Kenny Metheny and Pamela Metheny, as Conservators of the Estate of Cody Ryan Metheny."  Under the heading "Summons in a Civil Action," the summonses say "To: (*Defendant's name and address*) Kenny Metheny" and, on hers, "Pamela Metheny."  The Court finds that the summonses directed to Pamela and Kenny Metheny satisfied the requirements of Rule 4 and were sufficient to give this Court jurisdiction over them.  While the Methenys attempt to assert now that the nature of the action against them was ambiguous, in their bankruptcy action, the Methenys clearly took the position that this action was not against them personally; they did not list Voogt as a creditor and stated that there were no actions pending against them at the time they filed the bankruptcy action. (Docket No. 24, Exhibit 1).  The Methenys did not enter an appearance in this action until two days after they received the discharge of their personal debts from the bankruptcy court.  The Court finds that summons was properly served on the Methenys as conservators of Cody's estate.

Under Rule 55(c) of the Federal Rules of Civil Procedure, the court may set aside an entry of default upon a showing of good cause.  To determine whether good cause has been shown, courts look at "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Johnson v. Dayton Elec. Mfg. Co.,* 140 F.3d 781, 784 (8th Cir. 1998).  The only excuse offered by the Methenys for their failure to respond to the summonses was that they were confused as to whether they were being sued individually or as conservators.  This is an issue that could have been timely raised in a motion to dismiss; instead,

the Methenys chose to disregard the action pending in this Court while they sought a discharge

for their personal debts in the bankruptcy court.  Even after Voogt was granted relief from the

automatic stay from the bankruptcy court on November 6, 2013, the Methenys still chose not to

enter an appearance in this action.  The Eighth Circuit discussed the standard for setting aside the

entry of a default in *Johnson*: "[o]ur cases have consistently sought to distinguish between

contumacious or intentional delay or disregard for deadlines and procedural rules, and a

'marginal failure' to meet pleading or other deadlines.  We have rarely, if ever, excused the

former." *Id.* at 784.  It is clear in this case that the Methenys' failure to file an answer in this case

until almost a year after it was due was a deliberate decision and not a marginal delay.  They

proffer no meritorious defense to Voogt's claim for payment under any of the theories of

recovery.  Finally, the prejudice to Voogt if the defaults were set aside is clear: the case has been

pending since June of 2013, Voogt seeks payment for services rendered beginning in 2008, and

they have had to pursue their right to collect in two courts.  Any further delay would be highly

prejudicial.  Therefore, the Methenys' motion to set aside the entry of default and motion to

dismiss is denied, and Voogt's motion for default judgment against them in their capacity as

conservators of Cody's estate is granted.  A separate default judgment will be entered based on

the affidavit of damages (Docket No. 24, Exhibit 10) in the amount of $1,990,100.86

representing $1,156,860.00 for neurological rehabilitation services, room, and board and

$833,240.86 in finance charges plus finance charges $570.51 per day from June 1, 2014 until

paid.

<u>Cody Ryan Metheny</u>

After being served on June 27, 2013, Cody filed an answer on September 9, 2014, after

the entry of default against him and after Voogt had filed a motion for summary judgment or,

alternatively, for default judgment.  He has not moved to set aside the entry of default against

him. Cody's answer raises the affirmative defenses of failure to state facts upon which relief can

be granted, lack of a valid, enforceable contract with him, improper service, lack of capacity to

fraudulently convey property, waiver, and estoppel.  The Court finds that service on Cody was

proper when the summons directed to him was served by substitute service on his mother, an

adult co-resident.

In Argent's response to the motion for default against Cody, it asserts that Cody was not

properly served because he is an incompetent person.  Pursuant to Rule 4(g) of the Federal Rules

of Civil Procedure, service on an incompetent person is to be accomplished pursuant to the state

where service is made.  Rule 4(d)(3) of the Arkansas Rules of Civil Procedure requires that

where the defendant is someone for whom a guardian has been appointed, "service must be upon

the individual and the guardian."  Cody does not have a guardian appointed.  He does have co-

conservators appointed by order of the probate court finding that Cody was injured "physically

and continues to experience marked impairment of his capacity to execute business contracts,

financial expenditures, property acquisitions and so forth without guidance and assistance."

(Docket No. 24, Exhibit 13).  The issue of incompetence and the appointment of a conservator

was discussed by Judge Holmes in *Yeary v. Baptist Health Foundation,* 2008 WL 110854 (E.D.

Ark. 2008).  As Judge Holmes pointed out, Arkansas law authorizes appointment of a

conservator when "the person in question is by reason of advanced age or physical disability

unable to manage his or her property[.]" *Id.* at 6 (quoting Ark. Code Ann. 28-67-105).  This does

not make a person incompetent as a matter of law.  The probate court did not make a finding of

incompetence.  The order appointing the Methenys co-conservators of Cody's estate repeatedly

stated that he was injured or disabled "physically."   The finding that he needed guidance and assistance handling his affairs does not translate to legal incompetence.

Therefore, Voogt's motion for default judgment against Cody will be granted, and a separate judgment will be entered based on the affidavit of damages (Docket No. 24, Exhibit 10) in the amount of $1,990,100.86 representing $1,156,860.00 for neurological rehabilitation services, room, and board and $833,240.86 in finance charges plus finance charges of $570.51 per day from June 1, 2014 until paid. The judgment against Cody will be joint and several with the judgment against the Methenys as conservators.

Argent

There are no issues of default regarding Argent.  It responded to the complaint with a motion to dismiss arguing that Voogt had failed to state a claim upon which relief could be granted as to each of the claims in the complaint.  Judge Marshall, to whom the case was assigned at the time, cited Fed. R. Civ. P. 19(a)(1)(A) in denying Argent's motion to dismiss; he noted Voogt's agreement that none of the claims ran directly against Argent and found that Argent needed to remain a party since it held the disputed money as trustee so that complete relief could be given to the parties.  Specifically, Judge Marshall stated that "Argent need not do anything other than answer, respond to basic discovery, and wait."  (Docket No. 16).

In its motion for summary judgment, or alternatively, default judgment, Voogt takes the position that it has an equitable lien by agreement on the proceeds of the both of the malpractice suits that are in the custody of Argent.  The Court agrees.  "An equitable lien is merely an encumbrance on property that is construed based on the express agreement of the parties or with reference to the situation of the parties at the time of the contract and by the attendant circumstances." *Tobin v. Ins. Agency Co.,* 80 F.2d 241, 243 (8th Cir.1935) (cited with approval

8

in *In re Damon Pursell Const. Co.,* 490 B.R. 367, 373 (B.A.P. 8th Cir. 2013)).   The Court can

impose an equitable lien based on the parties' agreement or in the interest of justice. *In re Damon*

*Pursell Const. Co.*, 490 B.R. 367, 373 (B.A.P. 8th Cir. 2013)(citing *Exchange State Bank v. Fed.*

*Surety Co.,* 28 F.2d 485, 487 (8th Cir.1928)).   In *Sereboff v. Mid Atlantic Medical Services, Inc.*,

547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed. 612 (2006), the Supreme Court stated the general

equitable principle that "[t]o dedicate property to a particular purpose, to provide that a specified

creditor and that creditor along shall be authorized to see payment of his debt from the property

or its value is unmistakably to create an equitable lien." *Id.* at 367-368.   (Quoting *Walker v.*

*Brown,* 165 U.S. 654, 666 (1897)).

The agreement signed by Ms. Metheny as Cody's guardian refers to "the pending court

case."   At the time the agreement was signed, only the malpractice suit against the surgeon was

pending.   However, Ms. Metheny testified under oath in the bankruptcy action that when she

signed the agreement as Cody's guardian, it was her intent to pay Voogt's bill with the proceeds

from Cody's lawsuit against the insurer of ACH, Proassurance Company.   Voogt provided

witness testimony on Cody's behalf during the pendency of his case against ACH.   Further,

Cody remained at Voogt for approximately five years, for the duration of both lawsuits, with

both Voogt and the Metheneys operating on the understanding that Voogt would be paid from

any settlement proceeds resulting from Cody's malpractice suits.

An equitable lien was created by the parties' agreement and understanding that Voogt

would be paid out of any settlement proceeds resulting from Cody's malpractice suits.   Voogt

seeks to recover from specifically identifiable funds and a constructive trust was created as soon

as the funds were paid on behalf of the tortfeasors, regardless of where those funds were and by

what path they ended up in the special needs trust.    The only relief sought against Argent is for

an order directing Argent to segregate the amount Voogt is owed from the special needs trust and

pay this money to Voogt, relief to which Voogt is entitled.

Without deciding the issue of Argent's standing to oppose the motion for summary

judgment or for default filed against the Methenys, Argent argues that neither the Methenys nor

Cody ever had possession of the settlement proceeds from the two lawsuits.  The proceeds from

the suit against the surgeon were paid directly from the malpractice insurance carrier to Argent's

predecessor trustee.  The settlement proceeds from the suit against ACH's insurer were likewise

wired directly to the Trust.  Regardless of whether the Methenys ever held a check from the

proceeds in their hands, the money was paid as directed by them or as directed by their attorney

on their behalf.  The argument made by Argent that an equitable lien doesn't exist because the

specifically identifiable funds were not in the possession and control of the Methenys is

unpersuasive.  *See Airtran Airways, Inc. v. Elem*, 2014 WL 4694776 (11th Circuit, 2014).

For the reasons stated above, Voogt's motion for summary judgment, or, alternatively,

for default judgment against the Metheny defendants (Docket No. 24) is GRANTED.  Argent's

motion to stay proceedings until separate counsel has been secured for Cody Metheny (Docket

No. 34) is DENIED as moot.  The Metheny's motion to set aside default and to dismiss (Docket

No. 36) is DENIED.  Voogt's motion for protective order regarding discovery (Docket No. 37) is

DENIED as moot.  Voogt's motion to strike the answer and motion for summary judgment filed

by Cody Metheny (Docket No. 62) is DENIED as moot.  Cody Metheny's motion for partial

summary judgment (Docket No. 62) is DENIED.

IT IS SO ORDERED this 10th day of December, 2014.

_____

James M. Moody Jr.

United States District Court Judge